# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**MARK OTT**                                              **CIVIL ACTION**

**VERSUS**                                              **NO. 16-12664**

**DARREL VANNOY, WARDEN**                          **SECTION: "F"(1)**

## REPORT AND RECOMMENDATION

     This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  See 28 U.S.C. § 2254(e)(2).  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

## State Court Factual and Procedural Background

     Petitioner, Mark Ott, is a state prisoner incarcerated at the Louisiana State Penitentiary in Angola, Louisiana.  On November 20, 2008, Ott was charged by a bill of indictment with second degree murder of Robin Malta in violation of La. Rev. Stat. § 14:30.1.[1]  On December 11, 2009, a jury found petitioner guilty as charged by a vote of 10-2.[2]  On January 4, 2010, the trial court sentenced petitioner to life imprisonment at hard labor without the benefit of probation, parole, or suspension of

---

[1] State Rec., Vol. 1 of 9, Bill of Indictment dated November 20, 2008.
[2] State Rec., Vol. 1 of 9, minute entry dated 12/11/09; minute entry dated 12/14/09; State Rec., Vol. 4 of 9, verdict dated December 11, 2009; State Rec., Vol. 5 of 9, trial transcript of December 8, 2009; State Rec., Vol. 6 of 9, trial transcript of December 9, 2009; Vol. 7 of 9, trial transcript of December 10, 2009; trial transcript of December 11, 2009; closing argument transcript of December 11, 2009.

sentence.[3]  On January 5, 2012, the Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[4]  The Louisiana Supreme Court denied writs without stated reasons on May 25, 2012.[5]  Petitioner did not seek a petition for writ of certiorari with the United States Supreme Court.

On July 27, 2012, petitioner filed an application for post-conviction relief with the state district court raising claims of ineffective assistance of counsel, prosecutorial misconduct, and cumulative error.[6]  On February 8, 2013, the state district court held a post-conviction hearing and, on February 19, 2013, in a written judgment, it denied petitioner's application as to his ineffective assistance of counsel claims and declined to consider the other claims for procedural reasons.[7]

On March 12, 2013, petitioner filed an application for supervisory writs with the Fourth Circuit Court of Appeal.[8]  On May 23, 2013, the Fourth Circuit found "no error in the judgment of the district court summarily denying relator's application for post-conviction relief on February 19, 2013."[9]  Petitioner filed an application for writ with the Louisiana Supreme Court on June 13, 2013.[10]  On March 24, 2016, the Louisiana Supreme Court denied relief finding that petitioner failed to show he received ineffective assistance of counsel under Strickland v. Washington, 466 U.S. 668 (1984), that his prosecutorial misconduct claim was repetitive, and that his cumulative error claim was not cognizable.[11]

---

[3] State Rec., Vol. 1 of 8, minute entry dated January 4, 2010; State Rec., Vol. 7 of 8, sentencing transcript of January 4, 2010.
[4] State v. Ott, 80 So. 3d 1280 (La. App. 4th Cir. 2012); State Rec., Vol. 9 of 9.
[5] State v. Ott, 90 So. 3d 408 (La. 2012) (mem.); State Rec., Vol. 8 of 9.
[6] State Rec., Vol. 8 of 9.  Federal habeas courts must apply Louisiana's "mailbox rule" when determining the filing date of a Louisiana state court filing, and therefore such a document is considered "filed" as of the moment the prisoner "placed it in the prison mail system."  Causey v. Cain, 450 F.3d 601, 607 (5th Cir. 2006).
[7] State Rec., Vol. 1 of 9, judgment dated February 19, 2013; minute entry dated February 21, 2013; State Rec., Vol. 8 of 9, post-conviction hearing transcript of February 8, 2013.
[8] State Rec., Vol. 8 of 9, Application for Writ, 2013-K-0354, signed March 12, 2013.
[9] State Rec., Vol. 8 of 9, 4th Cir. Opinion, 2013-K-0354, dated May 23, 2013.
[10] State Rec., Vol. 9 of 9, Application for Writ, 13-KH-1418, signed June 13, 2013.
[11] State ex rel. Ott v. State, 187 So.3d 980 (La. 2016) (per curiam); State Rec., Vol. 9 of 9.

On June 30, 2016, petitioner filed the instant federal application seeking habeas corpus relief in which he asserts the following claims for relief: (1) ineffective assistance of counsel for failing to (a) present a DNA expert at trial; (b) object to the state's rebuttal argument; (c) move to suppress the smoke detector evidence; and (d) assign as error on appeal the admissibility of the smoke detector; (2) prosecutorial misconduct during the state's rebuttal argument; (3) sufficiency of the evidence; (4) his constitutional rights were violated when he was convicted by a non-unanimous verdict; and (5) the cumulative effect of errors at trial violated his right to due process.[12]

The state filed a response conceding that the application is timely and that petitioner exhausted his remedies in the state courts. The state, however, claims that petitioner's prosecutorial misconduct claim is procedurally barred and that petitioner's remaining claims have no merit.[13] Petitioner filed a reply.[14]

## Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for pure questions of fact, pure questions of law, and mixed questions of both. The amendments "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

---

[12] Rec. Doc. 1. "A prisoner's habeas application is considered 'filed' when delivered to the prison authorities for mailing to the district court." Roberts v. Cockrell, 319 F.3d 690, 691 n.2 (5th Cir. 2003). Petitioner signed his petition and certificate of service on June 30, 2016. Rec. Doc. 4, p. 57. Petitioner appears to present seven claims for relief but his claims enumerated in his petition as 5 and 6 are repetitive of his claims enumerated 1 and 2.
[13] Rec. Doc. 15.
[14] Rec. Doc. 16.

As to pure questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  Courts have held that the " 'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning."  Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases. A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (internal quotation marks, ellipses, brackets, and footnotes omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a

4

particular prisoner's case." White v. Woodall, 134 S. Ct. 1697, 1705 (2014). However, the Supreme Court cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Id., at 1706 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted). The Supreme Court has also expressly cautioned that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694. Accordingly, a state court's merely incorrect application of Supreme Court precedent simply does not warrant habeas relief. Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable.").

While the AEDPA standards of review are strict and narrow, they are purposely so. As the United States Supreme Court has held:

> [E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable.
>
> If this standard is difficult to meet, that is because it was meant to be. As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther. Section 2254(d) reflects the view that habeas corpus is a guard against *extreme malfunctions* in the state criminal justice systems, *not a substitute for ordinary error correction through appeal. As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal*

5

> *court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.*

Harrington v. Richter, 562 U.S. 86, 102-03 (2011) (citations omitted; emphasis added); see also Renico v. Lett, 559 U.S. 766, 779 (2010) ("AEDPA prevents defendants—and federal courts—from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts.").

The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein.  White, 134 S. Ct. at 1701.

### **Facts**

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> On June 11, 2007, Robin Malta was discovered bludgeoned to death in his apartment at 634 Port Street in New Orleans….
>
> …
>
> At trial, the jury was presented with witnesses that recounted the events leading up to the discovery of Mr. Malta's body.  Those witnesses included William Panter, the victim's landlord and next door neighbor, the victim's sister, Monica Malta, and his friend and employee, Mark Kinsell.  These three witnesses discovered Mr. Malta's body and contacted the police.  Mr. Kinsell testified that he grew concerned when he arrived for work at Salon D'Malta and found it in disarray.[1]  He described the condition of the salon as having a mirror on the floor, chairs out of order, hair clippings on the floor with the victim's trimmers, clippers and shears.  There were also beer bottles, cigarette butts and shot glasses on the floor.  Ms. Malta and Mr. Kinsell both acknowledged that this was out of the ordinary, as Mr. Malta was very meticulous about the condition of the salon.
>
> [1]The victim owned Salon D'Malta located at 1233 Decatur Street, New Orleans.
>
> Other witnesses that testified included the defendant's co-workers from his employment as a deckhand with Turn Services in New Orleans.  Those witnesses established dates in which the defendant applied for employment, interviewed and actually worked at Turn Services.[2]  Additionally, one of the co-workers testified that he often picked the defendant up and dropped him off at hotels and motels around the French Quarter.  Those witnesses established the defendant's whereabouts in New Orleans on or around the date of Mr. Malta's murder in contrast to Mr. Ott's initial statements that he only came to the city to party.
>
> [2]The defendant applied for and interviewed for the deck hand job on June 8, 2007.  The defendant signed a "Pre Employment Agreement" on June 12, 2007 and began his employment at Turn Services on June 17, 2007. His employment was terminated on February 12, 2008.

6

Also testifying at trial were numerous investigators and experts that participated in the investigation of the murder. John Gagliano was the chief investigator for the Orleans Parish Coroner's Office and acted as the liaison between the coroner's office and state pathologist in connection with the investigation into the murder of Mr. Malta. Mr. Gagliano photographed the crime scene and the deceased and compiled a report of his findings for the coroner. When he arrived at the scene, he observed the victim lying face down on his bed. Mr. Gagliano remembered that the apartment was very hot because the kitchen stove had been turned on full blast, and the oven door was open. He surmised that it appeared as if someone was trying to set the premises on fire to cover up a crime. There was a sticky substance on the floor and on the victim's body which Mr. Gagliano opined was a fire accelerant. After obtaining information about the victim and taking photos of the scene, he turned the body over and noted injuries and a sexual object, stuck in the victim's mouth. Mr. Gagliano further noted that there were no signs of forced entry into the apartment.

Detective Erbin Bush of the New Orleans Police Department arrived at the victim's residence and noted that EMS personnel and NOPD support units were already on site. Detective Bush identified photographs documenting the appearance and condition of the Port Street residence at the time of his arrival. He confiscated several items from the crime scene all of which were deposited in Central Evidence and Property for testing. None of the items collected produced physical evidence that lead to a suspect.

NOPD Crime Lab Director Anna Duggar testified by stipulation as an expert in blood spatter analysis, collection of evidence, blood testing, serology and development of latent prints. Ms. Duggar explained to the court that she visited the crime scene on June 14, 2007, to inspect and photograph the scene. She identified the photographs she took and further stated that she observed blood stains/spatter patterns on the living room wall, the door between the living and bedroom, the floor in front of the bedroom door and an orange paint bucket. Ms. Duggar opined that the victim was hit in the head multiple times in the living room, while he was seated on a bench, but she could not say what object was used to hit the victim. She also theorized that the victim was pulled from the bench onto the carpeted floor where he left a pool of blood. Judging from the volume of the blood on the orange paint bucket, Ms. Duggar theorized that the victim's assailant put the bucket over the victim's head as the victim was dragged into the bedroom.

NOPD Officer Derrick Melder, a member of the NOPD Crime Lab, collected evidence from and photographed the crime scene on June 13, 2007. His report indicated that after he photographed the scene, he collected two wooden hammers from the kitchen of the victim's residence.[3] He was later called back to the scene to collect items that had been discovered by Nate Burgess who worked for a crime scene cleanup business called Clean Scene.[4] An additional report was made pursuant to his June 22, 2007, visit to the crime scene reflecting the three pieces of a cell phone and a smoke detector that was discovered on that date. The smoke detector was identified as the exact make and model the landlord had installed in Mr. Malta's apartment.

[3]These items did not provide any conclusive evidence.

[4]The smoke detector was the one piece of physical evidence that linked the defendant to the crime. The defendant does not challenge the collection of the evidence, only the validity of the analysis of the DNA.

Detective Decynda Barnes, an NOPD homicide detective, testified that she became involved in this investigation in August 2007 when she read the report of her predecessor in this case. She learned that blood samples were collected during the investigation of this case, and she obtained swabs of the samples and sent them to the State Police Crime Lab for DNA analysis. The first swab was from a smoke detector which tested positive for human blood. The detective explained that the swab from the smoke detector resulted in an identification by CODIS.[5] Based on the CODIS hit for the defendant, Detective Barnes obtained the defendant's state identification number and prepared a warrant for his arrest.

[5]CODIS is an acronym for the combined DNA index system where criminals' DNA is kept on record. The system was designed by the FBI and supplied to the state for identification of DNA samples.

The arrest warrant was signed on July 18, 2008. Barnes located the defendant in the Albany, Louisiana jail. On July 30, 2008, the detective travelled to Albany and after advising the defendant of his Miranda rights escorted him to Orleans Parish. On the way, Detective Barnes asked the defendant if he knew the victim or had ever come to New Orleans. The defendant denied knowing the victim or anyone from the city and said he only came to New Orleans on occasion to party. She then asked the defendant if he had ever been inside of 634 Port Street, and again he said no. The defendant then asked Detective Barnes whether the police had any DNA evidence. The detective replied that the DNA the police had was a mixture of his and the victim's blood located at the crime scene. The defendant said he asked the question because his girlfriend was a nurse. Later during the conversation, the detective learned that the defendant was married with two children and also had a girlfriend. When the detective asked the defendant if he had ever had his hair cut in New Orleans, he responded that he had two haircuts but could not remember the name of the salons.

Upon returning to New Orleans Detective Barnes obtained a warrant to obtain buccal swab from the defendant for comparison with the sample held at the State Police Crime Lab. That sample was tested against the blood swab taken from the smoke detector to develop likelihood ratio statistics.[15]

## Petitioner's Claims[16]

## Sufficiency of the Evidence

Petitioner's first claim is that there was insufficient evidence to support his conviction. On direct appeal, the Louisiana Fourth Circuit Court of Appeal denied that claim, holding:

On appeal, the defendant contends that the evidence presented was insufficient to support his conviction. He offers two arguments to support this assertion: first, the evidence was too uncertain to establish beyond a reasonable doubt that the DNA found on the smoke detector in the victim's apartment was his; second, even assuming the jury

[15] State v. Ott, 80 So.3d 1280, 1281-84 (La. App. 4th Cir. 2012); State Rec., Vol. 9 of 9.
[16] For ease of analysis, this Report and Recommendation addresses petitioner's claims in a different order than they were listed in his federal application.

reasonably concluded that the DNA belonged to him, the evidence was still legally insufficient to prove his guilt beyond a reasonable doubt.

Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), set forth the constitutional standard for testing the sufficiency of the evidence requiring that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt. State v. Carmouche, 508 So. 2d 792, 799 (La. 1987). Often, circumstantial evidence is used to prove the commission of the offense. Id. Under those circumstances, the circumstantial evidence rule provided by La. R.S. 15:438 mandates that "assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." Id. That rule does not conflict with the Jackson standard. "[A]ll evidence both direct and circumstantial must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Due process requires no greater burden." Id. (citing State v. Garcia, 483 So. 2d 953 (La. 1986); State v. Porretto, 468 So. 2d 1142 (La. 1985); State v. Wright, 445 So. 2d 1198 (La. 1984)).

It is not the function of an appellate court to assess credibility or reweigh the evidence. State v. Hebert, 2000–1052, p. 12 (La. App. 4 Cir. 4/11/01), 787 So. 2d 1041, 1050 (citing State v. Smith, 600 So. 2d 1319, 1324 (La.1992)). Credibility determinations are within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. Id. Therefore, "absent internal contradiction or irreconcilable conflict with the physical evidence, a single witness's testimony, if believed by the fact finder, is sufficient to support a factual conclusion." State v. Marshall, 2004–3139, p. 9 (La. 11/29/06), 943 So. 2d 362, 369 (citing State v. Legrand, 864 So. 2d 89, 94 (La. 2003)). A trier of fact's determination as to the credibility of a witness is a question of fact entitled to great weight, and its determination will not be disturbed unless it is clearly contrary to the evidence. State v. Vessell, 450 So. 2d 938, 943 (La. 1984).

In order to obtain a conviction, the State must prove the elements of the crime charged beyond a reasonable doubt. Jackson, supra. The defendant in this case was convicted of second degree murder, defined in pertinent part by La. R.S. 14:30.1 as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm, or when the offender is engaged in the perpetration or attempted perpetration of, among other felonies, armed robbery or simple robbery.

Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent need not be proven as fact, but may be inferred from the circumstances and actions of the defendant. State v. Hebert, 2000–1052, p. 12, 787 So. 2d 1041, 1050. The intent to kill or to inflict great bodily may be inferred from the extent and severity of the victim's injuries. State v. Lawson, 08–123, p. 7 (La. App. 5 Cir. 11/12/08), 1 So. 3d 516, 522.

There is no dispute that the victim was beaten to death in his home. The defendant maintains that the jury was unreasonable in reconciling Ms. Herndon's contradictory testimony that the initial DNA match against his CODIS profile excluded only 80.5% of the population as contributors to the smoke detector sample, but that the defendant was ultimately determined to be at least 14.3 million times more likely than

another random person to have contributed to it.  As such, the defendant argues that Ms. Herndon's testimony is internally contradictory or irreconcilable with physical evidence and legally insufficient to sustain the jury's factual finding that the DNA found in the victim's bedroom belonged to him. Further, he maintains that absent DNA evidence, the remaining circumstantial evidence was insufficient to link him to the murder and for any reasonable trier of fact to have found that the State established his guilt beyond a reasonable doubt.

The defendant mischaracterizes Ms. Herndon's testimony regarding her DNA analysis results and suggesting that the rate of exclusion and likelihood ratios are necessarily contradictory and mutually exclusive, such that no reasonable trier of fact could have reconciled them in favor of finding that the DNA proved his presence in the victim's apartment.  The defendant also construes the 17.5% non-exclusion rate and the 14.3 million-to-one likelihood ratio as both pertaining to the chances that another person beside himself could have contributed to the blood sample found on the victim's smoke detector based on the 12–out–of–13 loci DNA match obtained by the Louisiana State Police lab.  The defendant contends it is mathematically impossible for a profile that cannot exclude one-fifth of the world's population (roughly 1.3 billion people) to exclude everyone but him in all but one of the 14.3 million random analyses.

Ms. Herndon testified on cross-examination that those two figures are entirely unrelated and that one does not negate the other.  The defendant is correct that the likelihood ratio of at least 14.3 million-to-one relates to the chances that another random person with the same overall genetic profile as the defendant—adjusting for allelic dropout—could have contributed to the mixture sample deposited on the smoke detector.  However, the 17.5% non-exclusion rate does not also relate to the tested profile as a whole but rather relates to the likelihood that another random person could have contributed the same single missing allele in the mixture sample that was initially matched to the defendant through CODIS.  For that reason, Ms. Herndon testified that it is necessary to take the entire profile into account in assessing whether the defendant could be excluded as a contributor because it was against protocol to exclude a subject based on the 17.5% chance that someone else may have contributed a single dropped allele.

We cannot find that the jury was unreasonable in accepting Ms. Herndon's expert testimony that allelic dropout is a generally accepted and not uncommon scientific phenomenon.  Given that the defendant's buccal swab was a perfect DNA match with the smoke detector sample at all 12 remaining loci, the jury was reasonable in inferring, based on reason and common sense, that the dropped allele in that sample in all likelihood also matched the defendant, and that the 14.3 million-to-one likelihood that someone other than the defendant contributed to the mixed sample found in the victim's apartment was valid and established the defendant's presence in the apartment beyond a reasonable doubt.

The defendant further argues that even if there was a trace amount of his DNA on the smoke detector, that finding is still not sufficient to establish that he committed the murder.  He contends that it was possible that he had gotten his hair cut at the victim's salon, and thus it is also possible that his DNA could have been dispersed through every hair follicle and microscopic scraping of skin released by a comb or clippers that were used on him.  The defendant suggests that his DNA would "rain

down" over the hands, clothes, and shoes of the person cutting his hair. He further argues that if the person who cut his hair was the victim, he could have easily carried a microscopic amount of the defendant's DNA into his house and then deposited it on the smoke detector when he changed the batteries, or he could have deposited the DNA onto the hands of the murderer, who then transferred it to the smoke detector.

Confronted with competing accounts of how the defendant's DNA ended up in the victim's bedroom, the jury chose to believe the State, and this Court is not in a position to second guess the jury's conclusion.[17]

The Louisiana Supreme Court then likewise denied relief without assigning additional reasons.[18]

Because a sufficiency of the evidence claim presents a mixed question of law and fact, this Court must defer to the state court's decision rejecting this claim unless petitioner shows that the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Taylor v. Day, Civ. Action No. 98-3190, 1999 WL 195515, at *3 (E.D. La. Apr. 6, 1999), aff'd, 213 F.3d 639 (5th Cir. 2000). Petitioner has not made such a showing.

As the Louisiana Fourth Circuit Court of Appeal correctly noted, claims of insufficient evidence are to be analyzed pursuant to the standard set forth in Jackson v. Virginia, 443 U.S. 307 (1979). In Jackson, the United States Supreme Court held that, in assessing such a claim, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319. Accordingly, "[t]he Jackson inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit.' " Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)) (emphasis added). Therefore, "a federal court may not overturn a state court decision

---

[17] State v. Ott, 80 So. 3d 1280, 1284-86 (La. App. 4th Cir. 2012); State Rec., Vol. 9 of 9.
[18] State v. Ott, 90 So. 3d 408 (La. 2012) (mem.); State Rec., Vol. 8 of 9.

rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.... Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." Cavazos v. Smith, 132 S.Ct. 2, 4, (2011).  Moreover, as the United States Fifth Circuit Court of Appeals has observed: "[A] state prisoner's burden is especially heavy on habeas review of the sufficiency of the evidence.  The jury's finding of facts will be overturned only when necessary to preserve the fundamental protection of due process of law." Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008) (quotation marks omitted).  Further, because the state court's decision applying the already deferential Jackson standard must be assessed here under the strict and narrow standards of review mandated by the AEDPA, the standard to be applied by this Court is in fact "twice-deferential." Parker v. Matthews, 132 S. Ct. 2148, 2152 (2012); see also Coleman v. Johnson, 132 S. Ct. 2060, 2062 (2012).

Additionally, it must be remembered that Louisiana's circumstantial evidence standard requiring that every reasonable hypothesis of innocence be excluded does not apply in federal habeas corpus proceedings; in these proceedings, only the Jackson standard need be satisfied, even if state law would impose a more demanding standard of proof.  Foy v. Donnelly, 959 F.2d 1307, 1314 n.9 (5th Cir. 1992); Higgins v. Cain, Civ. Action No. 09-2632, 2010 WL 890998, at *21 n.38 (E.D. La. Mar. 8, 2010), aff'd, 434 F. App'x 405 (5th Cir. 2011); Williams v. Cain, No. 07-4148, 2009 WL 224695, at *4 (E.D. La. Jan. 29, 2009), aff'd, 408 F. App'x 817 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *14 (E.D. La. Dec. 11, 2008); Wade v. Cain, Civil Action No. 05-0876, 2008 WL 2679519, at *6 (W.D. La. May 15, 2008) (Hornsby, M.J.) (adopted by Stagg, J., on July 3, 2008), aff'd, 372 F. App'x 549 (5th Cir. Apr. 9, 2010); see also Coleman, 132 S. Ct. at 2064 ("Under Jackson, federal courts must look to state law for the substantive elements of the

criminal offense, but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." (citation and internal quotation marks omitted)).

Under Louisiana law, second degree murder is defined as "the killing of a human being ... when the offender has a specific intent to kill or to inflict great bodily harm."  La. Rev. Stat. § 14:30.1(A).  The phrase "specific intent" is defined as the state of mind in which the perpetrator "actively desired the prescribed criminal consequences to follow his act or failure to act."  La. Rev. Stat. § 14:10(1).  Under Louisiana law, intent need not be proven directly but may be inferred from the actions of the accused and the circumstances surrounding those actions.  State v. Tate, 851 So. 2d 921, 930 (La. 2003) (citing State v. Brooks, 505 So. 2d 714, 717 (La.1987)); State v. Sharlhorne, 554 So. 2d 1317, 1321 (La. App. 1st Cir.1989).  The state is required to prove the identity of the perpetrator in addition to the elements of the crime.  State v. Vasquez, 729 So.2d 65, 69 (La. App. 5th Cir.1999).  Where the key issue is identification the state is required to negate any reasonable probability of misidentification in order to carry its burden of proof.  Id.

Petitioner does not argue that the state failed to establish any of the essential statutory elements of his second degree murder conviction, but rather, contends the state failed to prove beyond a reasonable doubt his identity as the perpetrator.  As he did before the state courts, petitioner argues that "[t]he evidence presented regarding the DNA on the smoke detector is too uncertain to establish beyond a reasonable doubt that it was Mr. Ott's DNA, and even if the jury could conclude that his DNA was on the smoke detector, that does not establish beyond a reasonable doubt that he is the murderer."[19]  Petitioner argues that Herndon's testimony regarding the rate of exclusion and likelihood ratios was internally inconsistent and, as a result, the jury had "no basis on which to determine which statistical analysis was appropriate for assessing the likelihood that the D[N]A belonged to Mr. Ott".[20]

---

[19] Rec. Doc. No. 4, p. 36.
[20] Rec. Doc. No. 4, p. 37.

He further argues that there were other hypothetical ways in which his DNA could have been deposited on the smoke detector.

In this case, the DNA evidence was the only physical evidence that linked petitioner to the murder. Herndon testified that the blood sample taken from the smoke detector found in Malta's bedroom was a mixture of DNA from two people and that neither Malta nor the petitioner could be excluded as contributors.[21] She testified that when she initially tested the swab from the smoke detector, before she had a reference sample from petitioner, 82.5% of the population could be excluded from the second profile generated.[22] After police obtained a known reference sample from petitioner, Herndon generated his DNA profile and compared it to the second DNA profile obtained from the blood from the smoke detector.[23] Herndon testified that it was 14.3 million times more likely that the DNA profile from the smoke detector was a mixture of DNA from Malta and petitioner than a mixture of DNA from the victim and any randomly selected individual.[24] She concluded that it was 3.16 billion times more likely that the swab from the smoke detector was a mixture of DNA from Malta and petitioner than a mixture of DNA from the petitioner and a randomly selected individual.[25] Finally, she testified that it was 15 million times more likely that the DNA profile obtained from the swab of the smoke detector was a mixture of petitioner and Malta than a mixture of DNA from two randomly selected people.[26]

Herndon's testimony was not internally inconsistent. As the Fourth Circuit explained, the two analyses were unrelated and the jury was entitled to credit both. Herndon explained that her initial finding that 17.5 percent of the population could not be excluded from the second DNA profile was

---

[21] State Rec., Vol. 7 of 9, trial transcript, pp. 132, 138, 140, 143, and 158.
[22] Id., at pp. 145, 158, 167.
[23] Id., at pp. 143-45, 167,
[24] Id., at p. 168.
[25] Id., at p. 169.
[26] Id.

based on a completely different statistical evaluation than the evaluation she conducted after she received petitioner's DNA reference sample.[27]   The first evaluation was conducted with only the reference sample from the victim thus requiring Herndon to do a statistical analysis as a probability of exclusion of the population.[28]  Once Herndon had the petitioner's reference sample, Herndon was able to compare petitioner's DNA profile to the second DNA profile generated from the blood found on the smoke alarm and conduct a statistical analysis of the likelihood ratio of inclusion of petitioner as a donor of the DNA.[29]

To the extent that petitioner is contending that Herndon's testimony was not credible, that was an issue for the jury, not a federal habeas court.  Where a petitioner's insufficient evidence claim is based on the credibility of witnesses, a federal habeas court generally will not grant relief.  See Schlup v. Delo, 513 U.S. 298, 330, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ( "[U]nder Jackson [v. Virginia] 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ], the assessment of the credibility of witnesses is generally beyond the scope of review."); Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir.2005) ("All credibility choices and conflicting inferences are to be resolved in favor of the verdict."); McCowin v. Scott, No. 93–5340, 1994 WL 242581, at *2 (5th Cir. May 26, 1994) (A "challenge of the jury's credibility choice fails to satisfy the Jackson standard for habeas relief."); Phillips v. Cain, Civ. Action No. 11–2725, 2012 WL 2564926, at *14 (E.D. La. April 11, 2012), adopted, 2012 WL 2565025 (E.D. La. July 2, 2012); Picou v. Cain, Civ. Action No. 06–6258, 2007 WL 1521021, at *5 (E.D. La. May 22, 2007).

The defense attempted to diminish the importance of the DNA evidence and pointed out that there was no evidence as to how the DNA got on the smoke detector.  Additionally, the jury heard

---

[27] Id., at p. 170.
[28] Id., at pp. 145, 167.
[29] Id., at pp. 143-44.

evidence in the form of jail telephone recordings during which petitioner speculated that he may have gotten his hair cut at the victim's salon and his DNA may have been transferred by Malta from the salon to the residence. While the jury apparently rejected that evidence, a jury is free to accept or reject evidence as it sees fit, and it is not for this court on habeas review to second-guess a jury's factual findings or to substitute its judgment of the weight of the evidence for that of the jury. See United States v. Larry, 199 F. App'x 321, 323 (5th Cir. 2006) (jury's decision to accept or reject testimony is a credibility determination not to be disturbed by this court).

Further, contrary to petitioner's claim that the DNA was the "only" evidence of his identity as the perpetrator, the jury was presented with other evidence, albeit circumstantial, of his guilt. The state presented evidence that, while petitioner made statements to police that he only went to New Orleans to "party" and did not know where Port Street is located, petitioner was in New Orleans on the days surrounding the murder and applied for a job with Turn Services, located just blocks from the victim's house and salon.[30] Additionally, while petitioner told police he was not familiar with the area, Raymond Fleming, an operations employee for Turn Services, testified that he transported petitioner to and from various hotels in the area around the office as well as in the French Quarter near the victim's home and salon.[31] Ott also told police that he did not know Malta, but Detective Barnes testified that she had received information that the victim and the petitioner were once seen together at Big Daddy's Bar.[32] Given the evidence, the jury could have determined petitioner's statements to police were lies that could be reasonably interpreted as consciousness of guilt. State v. Captville, 448 So.2d 676 680, n. 4 (La. 1984) ("Such a finding of purposeful misrepresentation reasonably raises the inference of a 'guilty mind', just as in the case of 'flight' following an offense or the case of a material

---

[30] State Rec., Vol. 7 of 9, trial transcript, pp. 24-25 (Barnes), 55-59, 63-66, 77 (Loar), 89 (Roberts).
[31] Id., at pp. 81-84 (Fleming).
[32] Id., at pp. 40 (Barnes), 89 (Roberts).

representation of facts by a defendant following an offense.  'Lying' has been recognized as indicative of an awareness of wrongdoing.") (citation omitted).  The state also presented evidence that petitioner initiated a conversation with police regarding the existence of DNA evidence.[33]  Additionally, Barnes testified that she received information that petitioner had been seen with Laura LaPaz, another suspect in the murder.[34]

Again, although the jury could have rejected this testimony and could have made contrary inferences from the evidence presented, the jury chose instead to credit the testimony of the witnesses and simply did not believe the defense arguments in reaching its guilty verdict.  A reviewing court is not authorized to substitute its interpretation of the evidence for that of the fact finder.  Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir.1985).  Thus, the Fourth Circuit correctly found that the testimony and evidence is more than sufficient for a reasonable juror to find that petitioner murdered the victim.

In summary, for the reasons explained by the Louisiana Fourth Circuit Court of Appeal, when the evidence in this case is viewed in the light most favorable to the prosecution, it simply cannot be said that the guilty verdict was *irrational*.  Therefore, petitioner cannot show that the state court's decision rejecting his claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Accordingly, under these doubly-deferential standards of review which must be applied by this federal habeas court, relief is not warranted.

---

[33] Id., at pp. 24 (Barnes), 88-89 (Roberts).
[34] Id., at p. 35.

## Prosecutorial Misconduct-Improper Rebuttal

Petitioner next claims that the prosecutor engaged in misconduct by making false claims during his rebuttal argument.  The state argues that petitioner's claim regarding the improper rebuttal argument is procedurally barred.

Petitioner raised a claim of prosecutorial misconduct based on improper rebuttal argument in his direct appeal.  The Louisiana Fourth Circuit Court of Appeal refused to consider this claim because it had not been preserved for review, holding:

> Next, the defendant asserts that certain statements made during the State's closing arguments were untrue and were prejudicial to the defendant.  More specifically, the defendant complains that the district attorney violated his due process right to a fair trial during the State's rebuttal closing argument when he falsely represented to the jury that the defendant's uninformed knowledge of certain investigative facts proved his guilt.[6]
>
> [6]Because this Court is not addressing the substance of this assignment of error the statements complained of have not been included in the opinion.
>
> The defendant concedes that "[d]efense counsel did not immediately object to this argument," but nonetheless asserts that this issue was preserved by its inclusion as a basis for his post-verdict motion for new trial, and asks this Court to consider the merits thereof.  Alternatively, the defendant asks this Court to find that his counsel was ineffective for failing to timely object to the district attorney's comments.
>
> A defendant cannot avail himself of an alleged error unless he made a contemporaneous objection at the time of the error.  La.C.Cr.P. art. 841(A); State v. Cuccia, 2005–0807, p. 34 (La. App. 4 Cir. 3/15/06), 933 So.2d 134.  Not only does an objection have to be made, but La.C.Cr.P. art. 841(A) requires that a defendant make known the grounds for his objection, and he is limited on appeal to those ground articulated at trial.  State v. Brooks, 98–0693, p. 9 (La. App. 4 Cir. 7/21/99), 758 So. 2d 814, 819.  Objections to remarks of the district attorney in closing argument must be made at that time and not after conviction in a motion for a new trial.  State v. Batiste, 318 So. 2d 27, 36 (La.1975).  By not objecting, defendant has failed to preserve this issue for review.[35]

The Louisiana Supreme Court denied relief without stated reasons.[36]

---

[35] State v. Ott, 80 So. 3d 1280, 1287-88 (La. App. 4th Cir. 2012); State Rec., Vol. 9 of 9.

[36] State v. Ott, 90 So. 3d 408 (La. 2012) (mem.); State Rec., Vol. 8 of 9.  Petitioner also raised a claim of prosecutorial misconduct based on the improper closing argument in his application for post-conviction relief.  The state argued that the post-conviction review of the issue was barred pursuant to La. Code Crim. P. art. 930.4(A), which prohibits review on post-conviction of a claim that was already fully litigated on direct appeal.  The state district court sustained the state's procedural objection and did not consider the claim.  State Rec., Vol. 9 of 9, post-conviction hearing transcript, pp. 4-8.  La. Code Crim. P. art. 930.4(A) is not a true procedural bar that would prevent this court from reviewing the claim.  The

The United States Fifth Circuit Court of Appeals has explained:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision. To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted). Moreover, where a lower court has rejected a claim on procedural grounds, later opinions upholding that decision are presumed to rely on the same grounds if reasons are not assigned. Id. ("Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.").

In this case, the Louisiana Fourth Circuit relied upon La. Code Crim. P. art. 841(A) to support its finding that Ott's claim was not preserved for appellate review because he failed to lodge the required contemporaneous objections at trial. Under La. Code Crim. P. art. 841(A) "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."

The state courts' rulings, therefore, were based on Louisiana law setting forth the procedural requirements for preservation and presentation of claims for appellate review. See Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999). It is well settled that this type of "contemporaneous objection" rule is an "independent and adequate" state procedural ground which bars federal habeas corpus review. Wainwright v. Sykes, 433 U.S. 72, 87–88 (1977). The ruling, therefore, was independent of federal

---

bar instead precludes Louisiana courts from review of a post-conviction claim which was already "fully litigated" on direct appeal. Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994). Article 930.4 applies to claims that are not new or different from something previously litigated and resolved on appeal by the higher state courts. Id., at 1583. Thus, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits." Id. A federal habeas court simply "look[s]-through" the ruling on collateral review and considers the findings on direct appeal where the claims were first litigated. Id., at 1582-83.

law and relied strictly on state procedural requirements.  See Harris v. Reed, 489 U.S. 255, 263 (1989);

Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997).

The failure to preserve a claim under La. Code Crim. P. art. 841 has also been repeatedly

recognized as an adequate state ground which bars review by the federal courts in a habeas corpus

proceeding.  See Toney v. Cain, 24 F.3d 240, 1994 WL 243453, at *2 (5th Cir. May 20, 1994) (per

curiam) (Table, Text in Westlaw); Proctor v. Butler, 831 F.2d 1251, 1253 (5th Cir.1987); Riggins v.

Butler, 705 F. Supp. 1205, 1208 (E.D. La.1989); Marshall v. Cain, No. 04–219, 2006 WL 2414073,

at *1 (E.D. La. Aug. 18, 2006) (Zainey, J.) (Order adopting Report and Recommendation), aff'd, 247

F. App'x 555 (5th Cir. 2007), aff'd, 247 F. App'x 555 (5th Cir. 2007); accord Duncan v. Cain, 278

F.3d 537, 541 (5th Cir. 2002) (citing Wainwright, 433 U.S. at 87–88 (Louisiana's contemporaneous

objection rule is an adequate state bar to federal review of a defaulted claims)).  The procedural bar

under La. Code Crim. P. art. 841 is adequate to bar federal habeas review of Ott's claim.

Where, as here, the procedural rules invoked by the state courts are "independent" and

"adequate, "federal habeas review is barred unless the petitioner demonstrates either cause and

prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice."

Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999).  However, "[t]o establish cause for a procedural

default, there must be something external to the petitioner, something that cannot fairly be attributed

to him."  Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (quotation marks omitted).

Here, petitioner has not argued, much less established, cause for this procedural default.  To

the extent that Ott's petition can be read to claim that his trial counsel's ineffective assistance

contributed to the default, as is further discussed in this report, that claim is without merit and does

not stand as cause for the default.

Because the purported ineffectiveness of trial counsel cannot serve as cause for the default of this claim, and because Ott has established no other cause for default of the claim, the Court need not consider whether actual prejudice would result from the application of the procedural bar.  Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996) ("Absent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice.").

When a petitioner has failed to meet the "cause and prejudice" test, a federal court should normally consider his claim only if the application of the procedural bar would result in a "fundamental miscarriage of justice."   In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him.  Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted."  Finley, 243 F.3d at 220 (citations omitted).  However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

Schlup v. Delo, 513 U.S. 298, 324 (1995).  Here, petitioner presents no new evidence whatsoever, much less any evidence of the type or caliber referenced in Schlup.  Moreover, sufficient evidence of his guilt was introduced at trial.  Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

For these reasons, Ott's claim that the prosecutor engaged in misconduct during his rebuttal argument is procedurally barred and should not be considered by this Court.

## Ineffective Assistance of Counsel

Ott makes four claims that his counsel was ineffective for failing to: (1) present a DNA expert at trial; (2) object to the prosecutor's rebuttal closing argument; (3) file a motion to suppress the smoke detector; (4) assign as error on appeal the admissibility of the smoke detector. As discussed below, these claims have no merit.

Ott raised these claims in his application for post-conviction relief. The state district court found that petitioner had failed to prove the requisite elements of an ineffective assistance of counsel claim.[37] The Fourth Circuit found no error in that ruling.[38] In the last reasoned decision, the Louisiana Supreme Court found that petitioner failed to show ineffective assistance of counsel under the Strickland standard.[39]

Here, the state court correctly identified the clearly established federal law which governs ineffective assistance of counsel claims: Strickland v. Washington, 466 U.S. 668 (1984). Strickland established a two-prong test for evaluating such claims. Specifically, a petitioner seeking relief must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. Id. at 697. A petitioner bears the burden of proof on such a claim and "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000). If a court finds that a petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the ineffective assistance claim without addressing the other prong. Strickland, 466 U.S. at 697.

---

[37] State Rec., Vol. 1 of 9, judgment dated February 19, 2013; minute entry dated February 21, 2013; State Rec., Vol. 8 of 9, post-conviction hearing transcript of February 8, 2013.
[38] State Rec., Vol. 4 of 5, 4th Cir. Opinion, 2015-K-0388, dated May 1, 2015.
[39] State ex rel. Ott v. State, 187 So.3d 980 (La. 2016) (per curiam); State Rec., Vol. 9 of 9.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all the circumstances.  See Strickland, 466 U.S. at 689; Carty v. Thaler, 583 F.3d 244, 258 (5th Cir. 2009).  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  A petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Harrington, 562 U.S. at 104 (citing Strickland, 466 U.S. at 689); Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, see also Williams v. Thaler, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice."  Day v. Quarterman, 566 F.3d 527, 536 (5th Cir. 2009) (quoting Strickland, 466 U.S. at 693).  In this context, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Cullen v. Pinholster, 563 U.S. 170, 189 (2011) (quoting Strickland, 466 U.S. at. 694).  This standard requires a "substantial," not just "conceivable," likelihood of a different result.  Harrington, 562 U.S. at 112.

In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett v. McCotter, 796 F.2d 787, 793 (5th Cir. 1986).  Thus, conclusory allegations of ineffective

assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief.  See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) (citing Ross v. Estelle, 694 F.2d 1008, 1012 (5th Cir. 1983)).

The Strickland standard also applies to claims of ineffective assistance of appellate counsel. Duhmel v. Collins, 955 F.2d 962, 967 (5th Cir. 1992) (citing Heath v. Jones, 941 F.2d 1126, 1130 (11th Cir. 1991)).  In reviewing claims of ineffective assistance of appellate counsel, the Supreme Court of the United States has expressly observed that appellate counsel "need not advance every argument, regardless of merit, urged by the [ ] defendant." Evitts v. Lucey, 469 U.S. 387, 394 (1985). When alleging ineffective assistance of appellate counsel, the defendant "must show that the neglected claim would have had a reasonable probability of success on appeal."  Duhmel, 955 F.2d at 967. However, failing to raise every meritorious claim on appeal does not make counsel deficient.  Green v. Johnson, 116 F.3d 1115, 1125-26 (5th Cir. 1997) (citing Ellis v. Lynaugh, 873 F.2d 830, 840 (5th Cir. 1989)).  Similarly, failing to raise a frivolous claim does not cause counsel's performance to fall below an objective level of reasonableness.  Courts give great deference to professional appellate strategy and applauds counsel for "winnowing out weaker arguments on appeal and focusing on one central issue if possible, and at most a few key issues." Jones v. Barnes, 463 U.S. 745 (1983).  This is true even where the weaker arguments have merit.  Id. at 751–2.  Instead, the applicable test is whether the omitted issue was "clearly stronger" than the issue[s] actually presented on appeal.  See, e.g., Diaz v. Quarterman, 228 F. App'x 417, 427 (5th Cir. 2007); see also Smith v. Robbins, 528 U.S. 259, 288 (2000).

Because petitioner's ineffective assistance of counsel claims were denied on the merits and present mixed questions of law and fact, this Court must defer to the state court decision rejecting those claims unless that decision was "contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §

2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002).   Moreover, the United States

Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective

assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable.   This is different from asking whether defense counsel's performance fell below Strickland's standard.   Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court.   Under AEDPA, though, it is a necessary premise that the two questions are different.   For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law.   A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.

> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision.   Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004).   And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity.  The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid.   "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court."   Knowles v. Mirzayance, 556 U.S. ----, ----, 129 S. Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington, 562 U.S. at 101 (citation omitted).  The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve.   Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence.  The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standard.*

<u>Id.</u> at 105 (citations omitted; emphasis added). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court and the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to petitioner's ineffective assistance of counsel claims.

### 1. Failure to Call a DNA Expert

In his first claim of ineffective assistance of counsel, Ott contends that his trial counsel's performance was deficient because he failed to present the testimony of Laurence Mueller, a purported expert in forensic DNA typing, to counter the state's forensic DNA analyst's testimony regarding the statistical probability conclusions based on DNA analysis. Prior to trial, defense counsel consulted with Mueller and filed a motion in limine to exclude certain statistical likelihood ratio conclusions made by Marcy Herndon along with a declaration by Mueller.[40] In his declaration, Mueller opined that: (1) Herndon's statistics were without scientific legitimacy or mathematical validity; (2) Ott's CODIS profile and his reference sample must necessarily yield the same results; and (3) the assumptions Herndon made about a dropped allele were unfounded and that it was equally likely that

---

[40] State Rec., Vol. 4 of 9, motion in limine filed November 16, 2009.

the missing allele actually meant Ott was affirmatively excluded as a donor of the DNA found on the

smoke detector.  The trial court denied the motion after a hearing, and Mueller did not testify at trial.[41]

As the United States Fifth Circuit Court of Appeals has explained:

Claims that counsel failed to call witnesses are not favored on federal habeas review
because the presentation of witnesses is generally a matter of trial strategy and
speculation about what witnesses would have said on the stand is too uncertain.  For
this reason, we require petitioners making claims of ineffective assistance based on
counsel's failure to call a witness to demonstrate prejudice by naming the witness,
demonstrating that the witness was available to testify and would have done so, setting
out the content of the witness's proposed testimony, and showing that the testimony
would have been favorable to a particular defense.  This requirement applies to both
uncalled lay and expert witnesses.

Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010) (citations, quotation marks, and brackets omitted;

emphasis added); accord Day, 566 F.3d at 538 ("[T]o prevail on an ineffective assistance claim based

on counsel's failure to call a witness, the petitioner must name the witness, demonstrate that the

witness was available to testify and would have done so, set out the content of the witness's proposed

testimony, and show that the testimony would have been favorable to a particular defense.")  The Fifth

Circuit has "required this showing for claims regarding uncalled lay and expert witnesses alike."  Id.,

at 538 (citing Evans v. Cockrell, 285 F.3d 370, 377-78 (5th Cir. 2002) (emphasis added).  The Fifth

Circuit has "clarified that the seemingly technical requirements of affirmatively showing availability

and willingness to testify '[are] not a matter of formalism.' "  Hooks v. Thaler, 394 F. App'x 79, 83

(5th Cir. 2010) (quoting Woodfox, 609 F.3d at 808).  Further, there must be a " 'reasonable probability'

that the uncalled witnesses would have made [a] difference to the result."  Alexander, 775 F.2d at 603

(citation omitted).

Ott has not met the foregoing requirements necessary successfully to assert such a claim.  He

presented no evidence showing that Mueller was actually available and willing to testify at trial.

---

[41] State Rec., Vol. 7 of 9, hearing transcript of November 16, 2009.

Therefore, petitioner obviously failed to meet his burden of proof with respect to this claim.  See, e.g., Gray v. Epps, 616 F.3d 436, 443 (5th Cir. 2010).

Additionally, even if Mueller were available to testify, with respect to calling experts, it is clear that Strickland does not require for every prosecution expert an equal and opposite expert from the defense.  See Harrington, 131 S. Ct. at 791 (It is well within the bounds of a reasonable judicial determination for a state court to conclude that defense counsel could follow a strategy that did not require the use of experts).  The United States Supreme Court has recognized that "[i]n many instances, cross examination [of the prosecution's expert] will be sufficient to expose defects in an expert's presentation."  Id. at 791.

It is reasonable to conclude from the record that defense counsel chose to attack the DNA statistical evidence by moving to exclude Herndon's statistical findings and attacking Herndon's qualifications and findings through cross-examination at trial rather than calling Mueller to testify.[42] The decision not to call Mueller under the circumstances of this case was well within counsel's trial strategy discretion.  Dees v. Caspiri, 904 F.2d 452, 454–55 (5th Cir. 1990).  While it is true that the record does not reflect the reasons for counsel's decision, ample evidence exists to show that petitioner's counsel was well prepared for cross-examination of the state's expert witness.  Petitioner's counsel demonstrated this preparedness when on cross examination he (1) attacked Herndon's qualifications and education; and (2) won concessions from her that she did not know of any validated scientific studies supporting the frequency of allelic dropout, as well as that the "astronomical" likelihood ratios she had calculated did not negate her initial finding that 17.5% of the human population could, like the petitioner, not be excluded as possible donors of the "missing" allele in the

---

[42] Indeed, Petitioner stated at the hearing relating to his post-conviction application before the state district court that his counsel advised him that he did not intend to call an expert but rather planned to "use Miss Marcy Herndon's statement. He was gonna [sic] use her statement and he was going to address the DNA issue himself."  State Rec., Vol. 9 of 9, post-conviction hearing transcript, p. 8.

genetic sample deposited on the smoke detector.  After reviewing the record, it is evident that

petitioner's counsel had the knowledge necessary to make a determination of that trial strategy.  The

fact that his defense was not successful and Ott was convicted does not mean that counsel's actions

were deficient.  See Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004).  "[I]t is all too easy for

a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act

or omission of counsel was unreasonable."  Strickland, 466 U.S. at 689 (citations omitted).  Ott is not

entitled to federal habeas corpus relief on this claim.

### 2.  Failure to Object to Rebuttal Argument

Ott next contends that his trial counsel should have objected to the prosecutor's mistaken

argument on rebuttal regarding the origin of petitioner's knowledge of certain evidence the police had

collected.

During rebuttal, the prosecutor argued that the jail telephone calls demonstrated that Ott was

guilty and was trying to create an alibi.  Petitioner cites the following portion of that argument as

improper:

> What did Ms. Malta say when she's goes to the store?  When she goes to the
> shop Monday.  What do they see?  They see the place is all dirty.  They see the cigarette
> butts on the floor.
> Did Detective Barnes ever tell him that there was cigarettes butts all over the
> place?  Did Detective Barnes ever tell him that your DNA was on a cigarette butt?  That
> your DNA was taken from hair?  That your DNA was taken from some popped pimple?
> Did she ever say anything like that to him?  She absolutely did not.  He brought up
> DNA in the conversation on the ride home in the presence of Sergeant Roberts and
> there is nothing to contradict that testimony.
> He says, "It could be a cigarette butt and I don't think I was smoking cigarettes
> at that time.  I think I was trying to quit."  And she said, "Got cigarette butts and stuff
> like that."   "I don't remember smoking any cigarettes at any time I ever went to
> somebody's barber shop."  But they had cigarettes there.
> And he says, "Hello."  And she says, "I'm here.  I'm listening to you."  And he
> says, "But, um – and then we go to she don't have to worry.
> Again, how does he know there's cigarette butts on the floor at the Salon De
> Malta?  She doesn't tell him.  I guarantee you Ms. Malta doesn't tell him.  He only
> knows because he's at the salon De Malta.  He's the guy that he's buying the Coors

Light and Jagermeister for.  He's the guy whose blood, whose DNA is on the inside cover of this smoke alarm.[43]

The state contends that there was the evidence at trial of Ott having independent knowledge of the existence of DNA prior to his arrest.  It therefore contends that that portion of the argument was not improper.  The state admits that the prosecutor's rebuttal argument as it relates to the petitioner's knowledge of the existence of cigarette butts was based on a factual error and that Detective Barnes had indeed told Ott during a formal interview that the police had collected cigarette butts from the salon.  The state, however, argues that the brief rebuttal argument regarding petitioner's knowledge of the cigarette butts was neither persistent nor pronounced and was not the result of intentional misconduct.  It further argues that petitioner cannot establish that the remarks were so prejudicial that they rendered the trial fundamentally unfair.

It is clear that "[a] decision not to object to a closing argument is a matter of trial strategy," and, as such, is accorded great deference.  Drew v. Collins, 964 F.2d 411, 423 (5th Cir.1992); see also Burnett v. Collins, 982 F.2d 922, 930 (5th Cir.1993); Spicer v. Cain, Civ. Action No. 07–3770, 2007 WL 4532221, at *10 (E.D. La. Dec.19, 2007); Rios–Delgado v. United States, 117 F.Supp.2d 581, 589 (W.D.Tex.2000) ("Generally speaking, a failure to object, standing alone, does not rise to the level of constitutionally deficient performance.  In cases where an accused complains that counsel was ineffective because he did not object to something ..., the courts grant significant deference, as such actions fall squarely within the ambit of trial strategy.").  Even where an objection might have some chance of succeeding, an attorney is allowed to make a strategic choice to forego such an objection to avoid antagonizing the jury.  See Wiley v. Puckett, 969 F.2d 86, 102 (5th Cir.1992); see also Spicer, 2007 WL 4532221, at *10.

---

[43] State Rec., Vol. 7 of 9, closing arguments transcript, pp. 74-75.

Further, "counsel's failure to object to improper remarks by a prosecutor is not ineffective assistance unless the remarks are so prejudicial as to render the trial fundamentally unfair." Jones v. Estelle, 632 F.2d 490, 492–93 (5th Cir.1980). Therefore, it is not enough to show a misstatement of the evidence to be entitled to habeas relief. Instead, the petitioner must still demonstrate a reasonable probability that but for counsel's failure to object to the prosecutor's remarks, the verdict would have been different. Ott has not met that burden here.

In this case, there was no basis for defense counsel to object to the prosecutor's comments regarding Ott's independent knowledge of the existence of DNA evidence as the comments were not untrue. Both Detective Barnes and Sergeant Roberts testified that Ott initiated a conversation with them about the existence of DNA evidence during their transport of Ott from Livingston Parish to Orleans Parish and prior to his formal interview with police.[44] Therefore, any objection by Ott's counsel to the comments would have been meritless. Counsel is not obliged to make meritless objections. See Clark v. Collins, 19 F.3d 959, 966 (5th Cir.1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

Admittedly, the prosecutor's comments that the police did not tell Ott about the existence of the cigarette butts were untrue.[45] However, even if counsel's failure to object to those comments constituted deficient performance, petitioner clearly has not shown the prejudice required to support his claim. The jury was instructed on several occasions that the attorneys' closing arguments were not evidence,[46] and there is no reason to believe that they disregarded that instruction. Weeks v. Angelone,

---

[44] State Rec., Vol. 7 of 9, trial transcript, pp. 24 (Barnes), 89 (Roberts).

[45] Ott does not contend that the prosecutor's comments were the result of intentional misconduct. In fact, Ott concedes that the prosecutor simply misspoke. Rec. Doc. 4, pp. 35, 49 ("it must be assumed that [the prosecutor] did not know or recall the fact that Det. Barnes had told Mr. Ott every detail, to the point of gross exaggeration, about the evidence it had amassed during the investigation of the case."

[46] While the written jury instructions are not part of the record, the state trial court advised the jury several times during closing arguments that arguments are not evidence. State Rec., Vol 7 of 9, closing arguments transcript, pp. 56 ("Ladies and gentlemen, this is argument. This is the lawyer's interpretation. It's not evidence in this case."), 71 ("Ladies and gentlemen, this is just argument."). Additionally, in addressing another objection by defense counsel outside the presence

528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.").  Moreover, in any event, when the argument of the prosecution is viewed in its entirety along with the evidentiary record and the context of the overall trial, it cannot be concluded that Ott's conviction would not have occurred except for the prosecutor's comments or that the trial as a whole was fundamentally unfair.  As petitioner has not demonstrated that there is a reasonable probability that the result of the proceeding would have been different if only defense counsel had objected to this portion of the prosecution's rebuttal argument, he cannot show the prejudice necessary to warrant relief.

Ott has not established that his counsel was deficient or unreasonable in failing to lodge an objection to the prosecutor's rebuttal argument.  The denial of relief by the state courts was not contrary to, or an unreasonable application of Strickland.  Ott is not entitled to relief on this claim.

### 3.  Failure to Move to Suppress Smoke Detector

Ott next claims that his trial counsel was ineffective for failing to move to suppress the smoke detector.  He argues that the "smoke detector was tainted evidence being left on the crime scene for weeks after the police had released the scene back to the victim's sister.  Anyone could have placed the smoke detector at the scene afterwards or even contaminated it with DNA evidence and trial counsel should have argued this to the trial court."[47]

Under Louisiana law, "[a] defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained."  La. Code Crim. P. art 703(a).  Here, petitioner does not contend that his constitutional rights were violated by the seizure of the evidence.  Rather, he appears to argue that there was a defect in the chain of custody.

---

of the jury, the trial court noted, "A request for admonition to jury or qualifying comments to jury is already taken care of. Any arguments made during closing arguments is secure [sic] instruction saying that it is that, argument, and not to be considered by the jury as evidence.  And the jury was instructed on that…."  State Rec., Vol. 7 of 9, trial transcript, pp 35-56.

[47] Rec. Doc. No. 4, p. 41; Rec. Doc. 16, p. 6.

Under Louisiana law, "[a] defect in the chain of custody goes to the weight of the evidence rather than its admissibility." State v. Skinner, 191 So.3d 676, 682 (La. App. 4th Cir. 2016) (citing State v. Sweeney, 443 So. 3d 522, 528 (La. 1983)). Petitioner does not suggest an appropriate basis on which his counsel could have filed a motion to suppress. For this reason, counsel was not ineffective in failing to file a motion to suppress the smoke detector evidence. Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); Smith v. Puckett, 907 F.2d 581, 585 n.6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("counsel is not required to make futile motions or objections.").

To the extent that Ott's claim, construed broadly, can be read to allege that his counsel was ineffective in failing to object at trial to the admission of the smoke detector, petitioner fails to establish prejudice. He has not demonstrated that the evidence would not have been admitted had defense counsel objected as the defects in the chain of custody of the smoke detector did not render that evidence inadmissible. The Louisiana Supreme Court has explained:

> In order to introduce demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is the one connected with the case; the lack of positive identification or a defect in the chain of custody goes to the weight of the evidence rather than to its admissibility.

State v. Sam, 412 So.2d 1082, 1086 (La.1982). "The law does not require that the evidence as to custody eliminate all possibilities that the object has been altered." State v. Hansbro, 796 So.2d 185, 198 (La. App. 2nd Cir. 2001); see also State v. Dunbar, 798 So.2d 178, 181 (La. App. 4th Cir. 2001). "Ultimately, a chain of custody or connexity of the physical evidence is a factual matter for the jury." State v. Addison, 871 So.2d 536, 551 (La. App. 5th Cir. 2004).

In this case, the state presented testimonial evidence from Burgess regarding his discovery of the smoke detector as well as photographic evidence demonstrating the smoke detector's presence in

Malta's bedroom at the time of the investigation of the crime scene by law enforcement.[48]  Therefore, the smoke detector evidence was properly admitted even without the establishment of a proper chain of custody, and he was not prejudiced by his counsel's failure to object to its admission.[49]

Petitioner has not demonstrated that the state courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, federal law.  He is not entitled to relief as to this claim.

### 4.  Failure to Raise Smoke Detector Issue on Appeal

In his final claim of ineffective assistance of counsel, petitioner claims that his appellate counsel was ineffective for failing to raise the issue of the admissibility of the smoke detector on appeal.

As previously indicated, the admission of the smoke detector evidence was not objected to at trial.  Thus, the matter was not preserved for appeal and appellate counsel would have had no basis to present the issue.  La. Code Crim. P. art 841(a) (providing that an irregularity or error cannot be raised on appeal unless an objection was made at the time of the occurrence).  Even if appellate counsel had nevertheless raised the issue, the Fourth Circuit Court of Appeal would have rejected it as procedurally defaulted.  Petitioner therefore has not established prejudice resulting from appellate counsel's failure to raise the issue on appeal.

Further, even had an objection to the admissibility of the smoke detector evidence been preserved, effective appellate counsel are not required to assert every nonfrivolous available ground

---

[48] State Rec., Vol. 6 of 9, trial transcript, pp. 53, 206-208, 212; State Rec., Vol. 7 of 9, closing argument transcript pp. 53-54 (referring to state's exhibit 48, a photograph taken by the coroner's office photographer, depicted the smoke detector at the time of the police investigation of the residence).

[49] Defense counsel attempted to raise doubt in the minds of the jurors regarding the smoke detector evidence during his cross-examination of Burgess and his closing argument.  During his closing argument, he pointed out that more than 20 trained law enforcement investigative officers as well as emergency medical services personnel and firemen were inside the house over a period of four days, but that no one saw the smoke detector.  He argued that the smoke detector was not found by Burgess until days after law enforcement had completed its investigation of the crime scene and that there was no evidence as to how the DNA on the smoke detector came into being or how it was left.  State Rec., Vol. 7 of 9, closing argument transcript, pp. 3-32, 35-37.

for appeal.  Green v. Johnson, 160 F.3d 1029, 1043 (5th Cir. 1998) (citing Evitts, 469 U.S. at 394).  In fact, the United States Supreme Court has long recognized that appellate counsel filing a merits brief need not and should not argue every nonfrivolous claim; instead, appellate counsel may legitimately select from among them in the exercise of professional judgment to maximize the likelihood of success on appeal.  Jones v. Barnes, 463 U.S. 745, 751–52 (1983).  Furthermore, counsel may exclude a nonfrivolous claim if it was unlikely to prevail on appeal.  See Anderson v. Quarterman, 204 F. App'x 402, 410 (5th Cir. 2006) (failure to raise meritless claims did not prejudice petitioner); Penson v. Ohio, 488 U.S. 75, 83-84 (1988) (noting that courts have refused to find counsel ineffective when the proposed appellate issues are meritless).  Therefore, because appellate counsel's essential duty is to focus on arguments that are most likely to succeed on appeal, counsel will not be found constitutionally ineffective for failure to raise every conceivable issue.  Branch v. Smith, 538 U.S. 254, 288 (2003); Jones, 463 U.S. at 754.

Here, for the reasons previously explained, the issue that Ott raises regarding the admissibility of the smoke detector lacks merit.  As the issue clearly would not have succeeded on direct appeal, petitioner fails to demonstrate the prejudice necessary to satisfy the Strickland standard on appeal.  Thus, the state courts' denial of relief on this claim was neither contrary to, nor an unreasonable application of, federal law.

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Ott clearly has not made that showing in the instant case.  Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

**Non-Unanimous Verdict**

Ott next claims his right to a fair trial was violated by the provisions of Louisiana law that allow non-unanimous jury verdicts in non-capital felony cases like his. Ott was convicted of second degree murder by a vote of 10-2.[50]

Ott raised this claim on direct appeal. The Fourth Circuit denied relief finding that under the current Supreme Court jurisprudence, non-unanimous twelve-person jury verdicts are constitutional.[51] The Louisiana Supreme Court denied writs without stated reasons.[52]

The decades-old and clearly established United States Supreme Court precedent applicable to this claim is directly contrary to Ott's argument. In Apodaca v. Oregon, 406 U.S. 404 (1972), and Johnson v. Louisiana, 406 U.S. 356 (1972), the United States Supreme Court upheld the constitutionality of state laws – including Louisiana's – that permitted criminal defendants to be convicted by less than unanimous votes. While the Supreme Court itself has recently described the Apodaca/Johnson holding as "the result of an unusual division among the Justices," it also made clear in the same breath that Apodaca/Johnson remains the law of the land: "The [Supreme] Court has held that although the Sixth Amendment right to trial by jury requires a unanimous verdict in federal criminal trials, it does not require a unanimous verdict in state criminal trials." (citations omitted, emphasis added) McDonald v. City of Chicago, 130 S. Ct. 3020, 3035 n. 14 (2010).

In the habeas corpus context, the Fifth Circuit has recognized that a prisoner's constitutional challenge to a state court conviction by a non-unanimous jury must be rejected under Apodaca/Johnson: "We first note that we cannot find, as petitioner would like, that the state court violated any federal right to a unanimous verdict in state court, because the Supreme Court 'has not

---

[50] Two of the jurors voted for a responsive verdict of manslaughter. State Rec., Vol. 1 of 9, minute entry dated December 14, 2009; Vol. 7 of 9, sentencing transcript, p. 4.
[51] State v. Ott, 80 So. 3d 1280, 1288 (La. App. 4th 2012); State Rec., Vol 9 of 9.
[52] State v. Ott, 90 So. 3d 408 (La. 2012) (mem.); State Rec., Vol. 8 of 9.

held that the Constitution imposes a jury unanimity requirement.'" <u>Hoover v. Johnson</u>, 193 F.3d 366, 369 (5th Cir. 1999) (quoting <u>Richardson v. United States</u>, 526 U.S. 813, 119 S. Ct. 1707, 1712 (1999) and citing <u>Johnson</u>) (emphasis added).

Ott effectively concedes in his own written submissions that the clearly established precedent in <u>Apodaca</u> and <u>Johnson</u> is contrary to his position. Ott seeks change in the law and does not demonstrate contrary or unreasonable application of clearly established Supreme Court precedent in his case. Simply stated, Ott asks this Court to reconsider the Supreme Court's holdings in <u>Apodaca</u> and <u>Johnson</u>. On federal habeas corpus review, however, it is not the function of this Court to reassess the law pronounced by the Supreme Court. That is not the role of this Court under the AEDPA. <u>See</u> <u>White</u>, 134 S. Ct. at 1706. Instead, the standard to be applied is whether the state courts' decisions to uphold Ott's conviction based on a non-unanimous jury verdict was contrary to or involved an unreasonable application of clearly established United States Supreme Court precedent. Under <u>Apodaca</u> and <u>Johnson</u> and its progeny, including the decisions cited above, the state courts' decisions in this regard were wholly consistent with Supreme Court precedent, and Ott is not entitled to federal habeas corpus relief on this claim.

## **Cumulative Error**

Lastly, petitioner argues that he is entitled to relief when the errors in his case are considered cumulatively. However, the United States Fifth Circuit Court of Appeals has long expressed its disfavor of such claims in federal habeas corpus proceedings. For example, the Fifth Circuit has noted:

> [Petitioner] finally asserts that even if none of his claims entitles him to relief individually, all of them collectively, do. Habeas relief is available only where a prisoner is in custody in violation of the Constitution or of federal law. 28 U.S.C. § 2254. [Petitioner] cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless habeas claims as it is; we decline to adopt

a rule that would have the effect of soliciting more and has nothing else to recommend it.  Twenty times zero equals zero.

Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987).

Nevertheless, the Fifth Circuit subsequently recognized such claims, albeit in a strictly narrow set of circumstances.  The Fifth Circuit noted:

> In Derden v. McNeel, 978 F.2d 1453, 1454 (5th Cir. 1992), cert. denied, 508 U.S. 960, 113 S.Ct. 2928, 124 L.Ed.2d 679 (1993), the en banc court recognized an independent claim based on cumulative error only where "(1) the individual errors involved matters of constitutional dimensions rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors 'so infected the entire trial that the resulting conviction violates due process.' " Id., quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973).  Meritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised.  Derden, 978 F.2d at 1461.

Westley v. Johnson, 83 F.3d 714, 726 (5th Cir. 1996) (emphasis added); see also Turner v. Quarterman, 481 F.3d 292, 301 (5th Cir. 2007) ("[W]here individual allegations of error are not of constitutional stature or are not errors, there is 'nothing to cumulate.' "); Martinez Perez v. Dretke, 172 F. App'x 76, 83 (5th Cir. 2006) ("Obviously, if there was no error ... there was no cumulative error." (emphasis in original)).  In the instant case, petitioner has not shown that any of his individual claims have merit and, therefore, he is not entitled to relief merely by cumulating those claims, especially when he has not established that the cumulative effect of the alleged errors rendered his trial fundamentally unfair.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by Mark Ott be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on

appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. § 636(b)(1); see Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this  6th   day of November, 2017.

**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

39